B. J. CAVANAGH, Plaintiff, v. THE DISTRICT COURT of Polk County, Iowa, and HON. HUGH BRENNAN, one of the Judges thereof, Defendants.

**Attorney and Client:** IMPROPER EMPLÓYMENT. The appointment by the court of an attorney to discover foreign heirs of an intestate, does not make it improper for such attorney, upon discovery of heirs, to contract with them to represent their interests and collect the amount due them from the administrator upon a contingent fee.

**Judges:** DISQUALIFICATION: RELATIONSHIP. Where the son of a district judge, sitting in probate, was associate attorney in the recovery for foreign heirs of their interest in an estate, such judge was disqualified under the statute to order the administrator to pay a contingent fee for the service.

**Same:** CONTEMPT: CHARGING A JUDGE WITH CORRUPTION. Where an attorney for foreign heirs contracted with them for a contingent fee to collect their interest in the estate, the order of court requiring the administrator to pay the amount was simply a confirmation of the attorney's right under the contract; and the fact that the presiding judge was disqualified to make the order, because of his relationship to an associate attorney, was insufficient to sustain a charge that the judge was guilty of fraud or corruption in making the order.

**Same.** Where an attorney wrongfully charged a judge of the court with corruption but made no attempt to substantiate his plea that

the charge was made in good faith and without intent to reflect upon the integrity of the judge, and upon filing the charge immediately furnished the newspapers with a copy of the same for publication, thus tending to bring the judge and his office into temporary ill repute, he was properly convicted of contempt.

*Certiorari to Polk District Court.*—HON. HUGH BRENNAN, Judge.

SATURDAY, NOVEMBER 22, 1913.

THIS is a certiorari proceeding in the nature of an appeal, brought in this court to review the action of the district court, Hon. Hugh Brennan, presiding judge, in certain contempt proceedings therein had against the complainant herein, wherein the complainant herein was adjudged guilty of contempt and was adjudged to pay a fine.—*Affirmed.*

*B. J. Cavanagh, Parker, Parrish & Miller,* and *Jacob Sachs,* for plaintiff.

*H. W. Byers,* and *George Wambach,* for defendants.

EVANS, J.—The plaintiff is an attorney at law residing in Des Moines. On December 28, 1912, he filed a motion and affidavit in a certain probate proceeding involving the estate of Hans Bohstedt, deceased, and then pending in the district court of Polk county, and before the defendant Hugh Brennan as one of the judges of such court. The motion attacked the validity of a certain order made by the defendant judge on December 7th previous, whereby the allowance of an attorney fee was made in favor of attorney George Wambach. Bohstedt died in Polk county without known relatives in this country. For thirty-two years he had made his home with John Haddick, continuing up to the time of his death. Shortly after his death, and in March, 1912, Lewis Haddick, son of John, was appointed administrator of the estate. John

Haddick filed a claim for about $14,000 against the estate for thirty-two years' board. The claim came on for hearing before the defendant judge in August, 1912. The claimant and the administrator were represented by different attorneys. The case was submitted and taken under advisement. Believing that the administrator was naturally sympathetic toward his father's claim against the estate, the trial judge instituted an inquiry for the discovery of heirs in Germany, where the deceased was born. Proceeding under the statute, he appointed George Wambach as special attorney to discover heirs, if any. In due time Wambach reported the discovery of alleged heirs, consisting of two brothers and a sister residing in Germany. Formal proofs of their relationship were filed in the probate proceeding. Thereupon Wambach was employed by such alleged heirs, through the German consul at Chicago, to represent them and to protect their interests in all matters pertaining to such estate. Wambach thereupon filed a motion in the probate case to set aside the submission of the John Haddick Case on his claim, and to open up the claim to further defense. Thereupon a compromise was effected between Wambach on behalf of the alleged heirs and the attorney of John Haddick, whereby Haddick was to receive $1,500 in full settlement of the claim. Lewis Haddick, administrator, assented to this compromise, but did so in the absence of his attorney, who was at that time ill, and who died a few days later. The compromise was reported to the defendant judge, who entered a formal order approving the same. Appended to such order of approval, or included within it, was a further order which became the occasion of later trouble. It was as follows:

It is further ordered by the court that the said administrator, Lewis T. Haddick, is hereby authorized and directed to pay George Wambach, Esq., the sum of $1,750 in payment for legal services rendered by the said George Wambach in connection with his investigation with regard to the heirs of said .estate and other services performed by him under the former orders of this court, which said amount shall be in full pay-

ment for the services of the said George Wambach rendered and to be rendered in connection with the settlement of said claim, services rendered in ascertaining the heirs and in the settlement of said estate.

This order was entered December 7, 1912. Shortly after the death of the administrator's attorney, the administrator filed a motion asking authority to employ as his attorney, B. J. Cavanagh, plaintiff herein. This motion was resisted by Wambach as attorney for the heirs, on the ground that the administrator had no further duties to perform except to distribute the estate, and that Wambach represented the beneficiaries thereof, and was under contract to perform all necessary legal services for the closing up of such estate. No ruling was had upon such motion. Some time after December 7th the administrator paid to Wambach the $1,750 as ordered. On December 28th the administrator filed through his attorney Cavanagh, the plaintiff, a motion to set aside such order of December 7th whereby the allowance of $1,750 was made as an attorney fee to said Wambach. Such motion was supported by an affidavit. The contemptuous matter charged against the plaintiff was contained principally in such affidavit. The affidavit was filed by the administrator and by plaintiff as his attorney. The general ground of attack upon the order was that the order was unreasonable and the amount of the fee unconscionable, and that the obtaining of the order was a fraud upon the estate on the part of attorney Wambach and attorney R. O. Brennan, a son of the defendant judge, and that the defendant judge permitted the fraud because of the undue influence of his son over him. The affidavit is too long to be fully set forth herein.

The specifications of the charge of contempt upon which the plaintiff was tried sets forth by quotation the contemptuous portions of such affidavit as follows:

(First. Page 2 of motion:) 'That said fee is excessive, unfair, and an unjust burden upon this estate. That the

allowance of said fee was a clear and flagrant abuse of the discretion of the court.'

(Second. Page 6, affidavit:) 'The duties of said George Wambach, attorney at law, were completed and ended upon the filing of the foreign records and documents above referred to, but that in defraud of said estate, and through trickery and deception of said George Wambach, with the permission of said Hon. Hugh Brennan, the said Wambach has accepted a retainer from said foreign claimants as heirship.'

(Third.) 'That the continuance of said George Wambach as special counsel for said estate, and also for said alleged heirs, is a gross fraud on said estate, and will result in the complete waste of the assets of said estate, and in the general impairment of same. That said Hon. Hugh Brennan, on the 23d day of December, 1912, was advised of the duplicity and double dealing of said George Wambach by deponent and by his attorney, B. J. Cavanagh, but that said Hon. Hugh Brennan has declared himself as in favor of said conduct on the part of said George Wambach, and has further stated to deponent and said attorney, B. J. Cavanagh, his intention of sustaining said George Wambach in his aforesaid fraudulent conduct and practice, all of which, as aforesaid, will result in great damage to the estate. That as an instance of the conduct practiced upon deponent, with the express consent of said Hon. Hugh Brennan, deponent further states that on the 7th day of December, 1912, the matter of the claim of John Haddick, after having been taken under advisement by said Hon. Hugh Brennan, as aforesaid, again came before said judge.'

(Fourth. Pages 7 and 8, affidavit:) 'Furthermore, that said fee is unreasonable and excessive, and an unjust burden upon this estate, and also that allowance thereof is a clear abuse of discretion on the part of said Hon. Hugh Brennan as judge of this court. Furthermore, deponent states that said fee of $1,750.00, as aforesaid, was collected in defraud of this estate, and was the result only of unlawful and illegal judicial coercion on the part of said Hon. Hugh Brennan.'

(Fifth. Page 8, affidavit:) 'Furthermore, said Hon. Hugh Brennan at the time said order was made on the 7th day of December, 1912, was informed and knew of the fact that one R. O. Brennan, an attorney at law, of the city of Des Moines, Polk county, Iowa, and the regularly appointed and acting solicitor for said city, and son of said Hon. Hugh Brennan,

was associated with the aforesaid George Wambach as special counsel of this estate. That the very identical order made by said Hon. Hugh Brennan, as aforesaid, on the 7th day of December, 1912, was drawn and dictated to a stenographer by said R. O. Brennan in the office of the said George Wambach, and that at the time the aforesaid order was signed by said Hon. Hugh Brennan, said R. O. Brennan, along with said George Wambach, was present in the chambers of said Hon. Hugh Brennan. That deponent is of the belief that said R. O. Brennan, as the son of Hon. Hugh Brennan, used his undue influence over said judge in the fixing and determination of the amount of the aforesaid fee, and that, owing to such relationship of father and son existing between said Hon. Hugh Brennan, as judge of this court, and R. O. Brennan, as associate to the special counsel appointed in this estate, the aforesaid, unreasonable, excessive, and fraudulent fee was allowed.'

(Sixth. Page 9, affidavit:) "That as further evidence of the conduct practiced upon deponent and the estate of which he is administrator, deponent states that at the time said fee was allowed, on said 7th day of December, 1912, to said George Wambach and his associate, R. O. Brennan, said Hon. Hugh Brennan, as judge of this court, knew that deponent had retained an attorney in the administration of the affairs of the estate, to wit, W. H. Wallingford, now deceased. That at the time said order was entered said W. H. Wallingford, now deceased, could not be found by deponent, and deponent objected to the entry of this order in the absence of his counsel, but that in spite of same, under the coercion of said Hon. Hugh Brennan and said George Wambach and R. O. Brennan, and with full faith in the justness and lawfulness of said order, entered on said 7th day of December, 1912, and under said order deponent was forced to and did pay over said sum of $1,750 to said George Wambach.'

And other language in connection with the matter set forth as shown by said motion.

Seventh. The court further sets forth as a cause for contempt that the said B. J. Cavanagh at the time he drafted and dictated the matter in question for the said Haddick, administrator, knew that the said George Wambach had been appointed to discover the heirs to this estate, and that he had reported the discovery thereof, and that he had been

selected by the heirs as their attorney, and that said heirs had entered into a contract with him for the fees that he was to receive, and that at the time the order was made allowing such fees it was only done because of such contract, and that notwithstanding that the said B. J. Cavanagh drafted and dictated, and caused to be put upon the files of this court the language hereinbefore stated, accusing this court of joining in the fraud and deception and trickery of the said Wambach, when he well knew that same was not true.

Eighth. And, further, that said matter was not only done in contempt of this court, but was done maliciously. That the said papers were not filed until about 5 o'clock on the evening of December 28, 1912, and that a copy of such motion was delivered to and placed in the hands of one of the reporters of the Register and Leader, a paper published at Des Moines, Iowa, and circulating throughout the state of Iowa and other states, and that other certain things were used to induce the reporter of said paper to have the same printed and published, and that same was done in furtherance of the contempt of this court.

The case of the plaintiff is argued here on the theory that plaintiff believed the statements of the affidavit to be true, and presented the same in good faith in obedience to his duty to his client, and that he intended no disrespect to the defendant judge, and that he acted without malice. It goes without saying that if the charges were true as made, or if the plaintiff had good reason to believe them to be true, this would be a justification to the plaintiff to make the same in good faith and without malice. We are required, therefore, to look into the record to ascertain the facts as they bear upon such charges.

I.   The first charge is that Wambach was guilty of fraud and double dealing; and all the contemptuous matter which tended to reflect upon the defendant judge was made to rest in the first instance upon the charge of fraud against Wambach. The first contention is that Wambach, having been appointed by the court to discover heirs, could not lawfully become the attorney for such heirs after discovering them. It is claimed that

1. ATTORNEY AND CLIENT: improper employment.

his duty as attorney to discover the heirs was inconsistent with the duty of an attorney for the heirs. We see no merit in this claim. The very purpose of the statute in conferring upon the court power to appoint an attorney to discover heirs and to represent absent heirs is to protect the interest of such absentees. Under the statute the expense of such protection is charged up in the final distribution to the shares of such absentees. In the absence of such statute the rights of undiscovered and absent heirs might be seriously impaired. When such heirs are discovered and are advised of the proceedings affecting them, why should they not be deemed competent to look after their own interests and to employ counsel? If yea, why should they not be at liberty to employ the same attorney who had protected their interests thus far? The acceptance of such employment by the attorney would ordinarily be entirely consistent with the past duties of such attorney under the appointment of the court. The alleged heirs in Germany executed a power of attorney to the German consul at Chicago. The consul employed Wambach, and proposed to pay him a contingent fee of 10 per cent. of the final amount of the estate provided there were no litigation and 20 per cent. thereof if there were litigation. This proposal was accepted by Wambach. The amount of the attorney fee in the order of December 7th was 10 per cent. of the estimated amount of the estate. These facts were known in a general way by the plaintiff before he filed the objectionable affidavit. So far, therefore, as accepting employment by the heirs and claiming a fee of $1,750, there was no misconduct on the part of Wambach, nor any basis for a charge of fraud against him.

II. It is next urged that the defendant judge had no authority to make such order fixing the attorney fee, because his son, R. O. Brennan, was interested in such fee and the amount thereof, in that he was to receive one-half thereof. It appears without dispute that after the appointment of Wambach, he associated R. O. Brennan with himself, and agreed to divide with

2. JUDGES : disqualification : relationship.

him whatever fees he should receive. R. O. Brennan was therefore interested as the owner of an aliquot part of the attorney fee fixed by the defendant judge in the order of December 7th.

Section 284 of the Code is as follows: "A judge or justice is disqualified from acting as such, except by mutual consent of parties, in any case wherein he is a party or interested, or where he is related to either party by consanguinity or affinity within the fourth degree, or where he has been attorney for either party in the action or proceeding. But this section shall not prevent him from disposing of any preliminary matter not affecting the merits of the case."

Section 3263 is as follows: "Where the judge is a party, or connected by blood or affinity with a person interested nearer than the fourth degree, or is personally interested in any probate matter, he shall order the same transferred to the district court of another district, or to be heard before another judge of the same district, or procure a judge from another district to hold his court for the hearing of such matters."

We think it quite clear that the personal interests of R. O. Brennan in this fee and the extent thereof was such as to disqualify the defendant judge from making the order under the sections above quoted. This is so, not because he was attorney for the parties, but because the amount of his fee was contingent and dependent upon the amount to be fixed in such order. *Roberts v. Roberts*, 115 Ga. 259 (41 S. E. 616, 90 Am. St. Rep. 108), *Yazoo v. Kirk* (Miss.), 58 South 710 (42 L. R. A. (N. S.) 1172). The defendant judge knew that R. O. Brennan was acting as attorney in association with Wambach, but he did not know that his fee was contingent or dependent in its amount upon the order made. It is clear however, that the order ought to have been set aside by the trial judge as soon as the facts were presented which disclosed his disqualification to enter it in the first instance; and this is so regardless of the contemptuous matter contained in the

motion and affidavit, and regardless, also, of the question whether the order was, in its final effect, prejudicial to the estate.

On the other hand, the evidence is conclusive, and undisputed that the amount of the fee fixed by the order was the amount agreed on by the contract. There is no suggestion of any mistake in the identity of the alleged heirs. Wambach was entitled, under his contract, beyond all dispute, to the same amount as that fixed in the order. He could have paid one-half thereof to R. O. Brennan without any legal impediment. So that the attorneys in fact gained nothing by the order to which they were not indisputably entitled. The fee was available to them under the contract without any order. Under such state of facts there was no room for corruption or fraud or evil motive of any kind. The order was in fact entered upon the supposition that the compromise of the Haddick claim left nothing in the way of the early closing and distribution of the estate, and that the making of such order would operate to the benefit of the estate in the computation of the collateral inheritance tax; the effect of the order being to eliminate such amount from the taxable body of the estate, as being a part of the cost of administration. Whether the order was erroneous in this respect as against the state of Iowa is beyond the present inquiry. It is enough to observe that in this respect it operated to the benefit of the Bohstedt estate, and that it could not therefore be a fraud upon it, as charged in the contemptuous affidavit.

3. SAME: contempt: charging a Judge with corruption.

III. Finding the facts as we do, the question still remains whether the plaintiff had reason to believe the contemptuous charges made, and whether, so believing, he made them in good faith. The plaintiff filed an answer to the contempt charged wherein he disclaimed all intention to reflect upon the integrity of the judge. This disclaimer was coupled with a denial that the

4. SAME.

charges made could fairly be construed as a reflection· upon the integrity of the judge. He also pleaded, in substance, that he made the charges in good faith believing them to be true. At the trial for contempt, he did not testify. The allegations of the answer, therefore, are left without any support by his testimony as to his belief and good faith. It is idle to say that the language used did not reflect upon the integrity of the judge. Plaintiff offered no apology, and no retraction, either before the trial or in the course thereof. Whatever he may have believed when he filed the affidavit, he had no ground to believe the contemptuous matter of his charges after hearing the evidence. The defendant judge would doubtless have accepted a manly apology at that time, and could have done so with due regard to the judicial office.

We do not overlook the fact that plaintiff, as attorney for his client, was under considerable stress because of other branches of the controversy pertaining to this same estate. One of them reached us here on another appeal. But he clearly overstepped all proper bounds of allegations and criticism. He filed the affidavit in question late on Saturday afternoon, and furnished a copy to the press for Sunday publication. He thereby wronged the trial judge greatly, and brought the judicial office into temporary ill repute.

As the record stands, he was clearly in contempt, and the order of punishment was unavoidable. The order of the trial court must therefore be *Affirmed* and the writ *Dismissed.*

WEAVER, C. J., and LADD, EVANS and PRESTON, JJ., concur.